UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARK E. SMITH,      )  Case No. 3:07CV1121
           )
    Petitioner,   )  JUDGE JOHN R. ADAMS
           )
  v.        )  Magistrate Judge George J. Limbert
           )
ERNIE MOORE, Warden,    )
           )
    Respondent.   )  **Report and Recommendation**
           )  **of Magistrate Judge**
           )
           )

    Petitioner Mark Smith ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred during his Marion County, Ohio Court of Common Pleas conviction for one count of Aggravated Robbery in violation of Ohio Revised Code ("O.R.C.") § 2911.01(A)(1) and three counts of Kidnapping in violation of O.R.C. § 2905.01 (A)(2). On August 13, 2007, Respondent Stuart Hudson filed an Answer/Return of Writ. ECF Dkt. #8. On September 28, 2007, Petitioner filed a traverse. ECF Dkt. #7.

    The case was referred to the undersigned for a Report and Recommendation. ECF Dkt. #3. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Grounds One and Two of the petition, with prejudice, due to a lack of merit, GRANT Ground Three of the instant petition, and remand Petitioner's case for resentencing:

I.   **SYNOPSIS OF THE FACTS**

    The Third District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6 th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999). As set

forth by the Third District Court of Appeals, the facts are:

{¶ 9} In this case, the evidence establishes that on October 19, 2004, at approximately 1:20 p.m., the Marion Community Credit Union located at 810 Kenton Avenue, Marion, Ohio 43302 was robbed. No customers were present during the robbery; however, three employees were present when the robber entered the Credit Union and ordered them to get on the floor. The robber took a total of $9,480.00 from one of the tellers at the Credit Union.

{¶ 10} The manager of the Credit Union, Elaine Evans, testified that the robber rushed through the Credit Union door and the first thing she heard was, "Give me all your money. Give me all your money." At that point she looked up and saw the robber for two to four seconds. She recalled that her first impression was that the robber's face was just like a clown's face because it was covered with red and white and the brim of a ball cap. She acknowledged that she did not get a good look at the robber's face because the robber ordered her to "Get down. Get down." She got down on the ground and crawled under the counter at the robber's direction. She sat there and waited and listened as the robber ordered the teller next to her to "Get up. Give me the cash in your drawer." Then she heard the cash drawer bang shut and the robber said, "Give me the cash in the other drawer." After she heard the second cash drawer bang shut, she heard the front door chime and the robber was gone. Upon the robber's departure, she pushed the teller panic button and called the police.

{¶ 11} Jackie Shenefield, a teller at the Credit Union, testified that she was decorating the lobby and was on a ladder when the robber entered the Credit Union. She testified that she was told to get off the ladder by the robber and when she turned around to look at him he pointed a gun at her and repeated that she needed to get off of the ladder. When she got off of the ladder, she observed that the robber had his hand out with the bag and was telling the other teller, "Give me the money" while he was still pointing the gun at her. She testified that the robber had something covering his face which was red, white and blue and patriotic. She observed that the covering slid down off of his face and she saw he had a full white beard. When this occurred he told her to get her face on the floor. Furthermore, she described the robber as a white male about fifty years old, approximately six feet tall and husky, wearing a hooded sweatshirt with another shirt under it. After the robber left, Jackie went over and locked the door and put up the signs that the Credit Union was closed for an emergency.

{¶ 12} Rose Trudeau, another teller at the Credit Union, testified that she saw the robber burst through the doors of the Credit Union and heard him say "This is a hold up. Everybody down." At that point she pushed back the stool she was sitting on and got on the floor. A few moments later, the robber told her to "Get up" and take the money from the teller drawer and give it to him. Then he ordered her to give him the money in the next teller register. She acknowledged that she did not get a good look at the robber's face; however, she described the robber as approximately six feet tall and hefty. She could not describe his race or whether he had facial hair. She remembered that he had on a hooded sweatshirt and a ball cap. In addition, she stated that she saw the gun twice during the robbery; once when he walked in and once when she got up from the floor.

{¶ 13} After the robber left and Jackie locked the door, Rose and Jackie observed the robber's vehicle drive away through the drive-thru window. The vehicle was an old Ford truck painted completely blue, including the wheels. The truck also did not have any license plates. Later that afternoon, the truck was found abandoned by the railroad tracks a couple of blocks from the Credit Union. During the inventory of the contents of the vehicle, a red, white and blue bandana, a pair of sunglasses, a red cap, and a

number of other items were found, including a receipt from REX TV identifying Tim Blanton as a purchaser on December 23, 2003. An investigation by the police revealed that the truck was registered to Tim Blanton. After speaking with Tim Blanton, the police learned that Tim Blanton had sold the truck to Smith sometime in April of 2004.

{¶ 14} At trial, Mark Losko, a forensic scientist in the DNA/Serology section of BCI, testified that the DNA found on the cap and bandana matched Smith's DNA. Smith stipulated that his DNA was found on the cap and bandana because they were his belongings. Mark Losko also testified that the DNA was tested in sixteen locations and the results were consistent between the cap, the bandana and the oral swab. He stated that there was no indication of a mixed DNA profile, where two individual's DNA overlap in the sample. Therefore, Mark Losko stated that the statistical calculations indicate that the expected frequency of the DNA profile in this case were 1 in 981 trillion individuals. However, on cross examination, Mark Losko testified that it is possible for no DNA to be found on an article if a person puts a hat or bandana on for twenty or thirty seconds.

{¶ 15} Jaclyn Brossia testified that her fiancé sold Smith an Oldsmobile car the day before she saw the newspaper article about the Credit Union robbery. She testified that the car was sold for nine hundred dollars to a man that she described as about six-two, kind of stockier with grayish-white hair and longer facial hair. She further stated that the man did not return for the title of the car within the next few days like he said that he would; thus, he never received the title to the car. Tim Endicott, Jaclyn's fiancé, testified that he sold the car to Smith when his friend Leonard Nutter brought Smith over to show him the car. Tim identified Smith in the courtroom as the person that he sold the car to and acknowledged that he knew him as Smitty.

{¶ 16} Meanwhile an acquaintance of Smith, Lisa Massey and Hollie Adkins, her roommate, were living in Florida. At trial they subsequently testified that Lisa was notified that there had been a robbery in Marion, the authorities were looking for Smith and Lisa should expect a visit from Smith. Lisa pulled up the Marion Star on the computer and found the information about the robbery and shared it with Hollie. Shortly thereafter, Smith arrived. Hollie Adkins testified that she had seen Smith previously when Smith had visited Lisa Massey just a few months earlier. She described Smith as having longer white hair with a beard during the first visit. The next time she saw him after Octoberfest he had shaved his head and his beard, except for a moustache. During her testimony, she did identify Smith as being the individual that she was referring to.

{¶ 17} Hollie Adkins also testified that Smith discussed a robbery in Marion, Ohio between ten and fifteen times during the two weeks following his arrival in Florida. She explained that Smith said that during the robbery his face was covered but the employees of the Credit Union couldn't see his face. He also said that during the robbery he did have a gun; however, Hollie testified that she had not seen the gun, nor could she describe the gun that was used. Smith also said that he had left the truck behind and purchased another car to drive to Florida. Hollie testified that Smith did not tell her how much money he got from the robbery, but she did observe that he had a fair number of bills but not a huge wad of money. About two to three weeks after Smith had arrived, Hollie decided to move out of Lisa's trailer and to find another place to live. She was uncomfortable with Smith and didn't want to be in the presence of someone who "had robbed a federal credit union in the State of Ohio."

{¶ 18} On November 22, 2004, Hollie Adkins' mother notified a sheriff regarding Hollie Adkins' story and the situation. On November 23, 2004, Hollie Adkins confirmed the story and situation that her mother had told authorities in Florida and

provided more detail to the detective regarding Smith's statements about the robbery of the Credit Union in Marion, Ohio. On December 9, 2004, Smith was arrested in Brooksville, Florida.

{¶ 19} Additionally at trial, Smith took the stand on his own behalf. First, Smith claimed that he did not match the physical description of the robber. Smith testified that on New Year's Day, 2004 he changed his appearance by shaving his hair and his beard off. He stated that he has kept it fairly short since the beginning of 2004.

{¶ 20} Second, Smith challenged the State's evidence regarding his ownership of the Ford truck at the time that it was found. Specifically, he testified that he sold the truck to another individual he met at a junk yard when he was scrapping another car. Apparently, the man was looking for an engine and after seeing the truck the man agreed to pay Smith four hundred dollars for the truck. Smith testified that this event occurred sometime between the 13th and 15th of October and that he did not know the man's name explaining that "I never asked him, never needed a receipt, nothing like that. He was buying the truck for the motor of it was his purpose of it so there was a guy at the junk yard."

{¶ 21} As for the bandana and the cap found in the Ford truck, Smith testified that when he sold the truck he left the contents because he didn't want the man to back out on the sale. Smith admitted that the bandana and the cap were his. Furthermore, he stipulated that the DNA found in the bandana and the cap were his.

{¶ 22} Finally, Smith challenged the allegation that he fled to Florida. Smith testified that he sold some vehicles and tied up some loose ends with the intention of going to Florida to visit Lisa Massey and to work on hurricane destruction for money, not to flee Ohio; that he purchased an Oldsmobile from Jaclyn Brossia's fiancé, Tim Endicott as a good, dependable car to get him to Florida and around for work; and that prior to leaving for Florida he did visit a friend for a few days to say good-bye. Additionally, Smith presented the testimony of John Smith, Jr., Scott McEldowney, Bobbie Jo McEldowney, Phillip Nicolas Owens, and Lisa Massey to support and corroborate the above testimony.

*State v. Smith*, Case No. 9-05-22, 2006 WL 389612 at *2-*5 (Ohio App. 3 Dist. Feb. 21,2006), unreported.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

On December 22, 2004, the Marion County, Ohio Grand Jury returned an indictment charging Petitioner with one count of Aggravated Robbery in violation of O.R.C. § 2911.01(A)(1), three counts of Kidnapping in violation of O.R.C. § 2905.01 (A)(2), and a firearms specification for each count pursuant to O.R.C. §§ 2941.145 and 2929.14(D).   ECF Dkt. #5, Ex. 2.

On April 7, 2005,  the case proceeded to a jury trial.  ECF Dkt. #5, Ex. 21-24.  On April 11, 2005, the jury convicted Petitioner of the Aggravated Robbery charge and all three kidnapping charges, but they acquitted him on all four firearm specifications.  ECF Dkt. #5, Ex. 4-5.  On June

9, 2005, the trial court sentenced Petitioner to nine years of imprisonment for Count 1 (Aggravated Robbery) and four years of imprisonment for each of Counts 2-4 (Kidnapping).  ECF Dkt. #5, Ex. 4.  The court ordered the sentence for Count 1 to be served consecutively and the sentences for counts 2-4 to be served concurrently, for a total sentence of 13 years of imprisonment.  *Id.*

### B.    Direct Appeal

On June 13, 2005, Petitioner filed a notice of appeal through trial counsel S. Fredrick Zeigler.  ECF Dkt. #5, Ex. 6 at 4.

On June 16, 2005 Petitioner filed an amended notice of appeal through new counsel, Kevin Collins.  ECF Dkt. #5, Ex. 7.

On September 1, 2005, Petitioner filed a brief in support of his appeal, raising the following assignments of error:

I.      THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT-APPELLANT'S CONVICTIONS FOR BANK ROBBERY AND KIDNAPPING.

II.     DEFENDANT-APPELLANT'S CONVICTIONS FOR BANK ROBBERY AND KIDNAPPING ARE CONTRARY TO THE MANIFEST WEIGHT OF EVIDENCE.

ECF Dkt. #5, Ex. 8.

On February 21, 2006, the Ohio Court of Appeals for the Third District denied the appeal and affirmed the trial court's judgment.  ECF Dkt. #5, Ex. 1, 11, 12.

### C.    Supreme Court of Ohio

On March 23, 2006, Petitioner, pro se, filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #5, Ex. 13.  Petitioner contemporaneously filed a brief in support of jurisdiction, raising the following propositions of law:

I.      Where the record contains insufficient evidence to prove each essential element of a charged offense beyond a reasonable doubt, a resulting conviction violates due process of law and reversal is required.

II.     Where a conviction is against the manifest weight of the evidence, a resulting conviction is violative of due process and equal protection and reversal is required.

III.    Where appellate counsel fails to raise significant and obvious issues of constitutional magnitude in favor of weaker arguments with little or no chance of success, the appellant has been denied the effective assistance of counsel on

appeal as guaranteed by the Sixth and Fourteenth Amendments and reversal is required.

IV.     Where a defendant is sentenced to serve a sentence that is beyond the statutory maximum available without any additional fact-findings, and does so by making judicial fact findings, the resulting sentence is void under the Sixth Amendment and reversal is required.

ECF Dkt. #5, Ex. 14.  On June 21, 2006, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question.  ECF Dkt. #5, Ex. 16.

### D.     Petition for Post-conviction Relief

On October 24, 2005, Petitioner filed a petition for post-conviction relief in the Marion County Court of Common Pleas pursuant to O.R.C. §§ 2953.21, 2953.23.  ECF Dkt. #5, Ex. 17. Petitioner raised the following claims:

1.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO PROPER SENTENCING AS GUARANTEED BY   THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION BASED UPON APPRENDI V. NEW JERSEY, BECAUSE THE JUDGE, NOT THE JURY, IMPROPERLY ENHANCED HIS SENTENCE BASED UPON FACTORS NOT FOUND IN THE JURY'S VERDICT OR RECOMMENDATION.

2.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO PROPER SENTENCING AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION BASED UPON THE UNITED STATES SUPREME COURT RULING IN BLAKELY V. WASHINGTON.

3.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO PROPER SENTENCING AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION BASED UPON THE UNITED STATES SUPREME COURT RULING IN UNITED STATES V. BOOKER.

4.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO PROPER SENTENCING AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION BASED UPON STATE V. COMER AND STATE V. MOORE.

5.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO PROPER SENTENCING AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION BASED UPON STATE V. MONTGOMERY.

6.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMMENDMENTS [sic] OF THE UNITED STATES CONSTITUTION, AND BY ARTICLE I OF THE OHIO CONSTITUTION BECAUSE TRIAL COUNSEL FAILED TO OBJECT TO

IMPROPER SENTENCING.

ECF Dkt. #5, Ex. 17.

On November 30, 2005, the court of common pleas dismissed the petition.  ECF Dkt. #5, Ex. 20.

**E.     28 U.S.C. § 2254 Petition**

On March 16, 2007, Petitioner filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities).  Petitioner has raised the following grounds for relief:

> **GROUND ONE:**
> Petitioner was deprived of due process of law by a conviction not supported by sufficient evidence.
>
> **SUPPORTING FACTS:**
> There was absolutely no evidence introduced to prove Petitioner's involvement for a rational trier of fact, beyond a reasonable doubt; wherein his description did not match the perpetrator and the testimony was circumstantial and internally inconsistent, insufficient under the law.
>
> **GROUND TWO:**
> Petitioner was deprived of the right to effective counsel on appeal, under the 6th and 14th Amendments.
>
> **SUPPORTING FACTS:**
> Appellate counsel overlooked the significant and obvious constitutional claim of the unlawfully enhanced sentence imposed upon him based upon judicial fact finding of elements not alleged in the charging instrument, or found by the jury, when the issue was a dead bang winner.
>
> **GROUND THREE:**
> Petitioner was denied due process and the right to jury trial by the imposition of a sentence enhanced by judicial fact finding of elements not charged.
>
> **SUPPORTING FACTS:**
> Petitioner's maximum statutory sentence based upon the jury verdict is three years.  The trial court made judicial fact findings of elements not alleged in the charg-instrument [sic] or found by the jury to enhance the sentence to thirteen years.

ECF Dkt. #1.  On August 13, 2007, Respondent Stuart Hudson filed an Answer/Return of Writ.

ECF Dkt. #8.  On September 28, 2007, Petitioner filed a traverse.  ECF Dkt. #7.

**II.     PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits

-7-

of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not an issue in this case.  *See* ECF Dkt. #5 at 10.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied  "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  Exhaustion of available remedies is not an issue in the instant case.

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for

a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1)     whether the petitioner failed to comply with an applicable state procedural rule;

(2)     whether the state courts actually enforced the state procedural sanction;

(3)     whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice

-9-

test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).  A state's *res judicata* rule barring post-conviction claims which could have been raised on appeal is an adequate and independent ground for *Maupin* purposes.  *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D.Ohio, 2004).  The above standards apply to the Court's review of Petitioner's claims.

### III.  STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 26, 2007, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United

States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.    Decisions of lower federal courts may not be considered.
>
> B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.      The state court decision may be overturned only if:

        1.      It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

        2.      the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.      'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## IV.    ANALYSIS

Based upon the applicable standards of review, the undersigned recommends that the Court dismiss Grounds One and Two of the instant petition, with prejudice, and grant Ground Three:

### A.    Ground One of the Petition lacks merit.

In Ground One, Petitioner claims that his conviction was not supported by sufficient evidence.    Despite the general prohibition against federal habeas corpus review of issues of state law, a claim that the evidence was insufficient to convict a petitioner is cognizable under 28 U.S.C. § 2254.  *See Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006).  Because the Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt," *Fiore v. White*, 531 U.S. 225, 228-29 (2001), "a state law question regarding the elements of the crime predicates the enforcement of [petitioner's] federal constitutional right." *Richey v. Mitchell*, 395 F.3d 660, 672 (6th  Cir. 2005).

Sufficient evidence supports a conviction if, after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th  Cir. 2006) ; *Brown*, 441 F.3d at 351; *United States v. Jamieson*, 427 F.3d 394, 402 (6th  Cir. 2005), cert.

denied, 126 S. Ct. 2909 (2006).  "This requires successful challengers to meet a very high threshold, even with respect to newly-discovered evidence." *Apanovitch*, 466 F.3d at 488 citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Obviously, this standard of review does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts.  *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).

An attack on the credibility of witnesses is simply a challenge to the quality of the government's evidence and is not a valid challenge to the sufficiency of the evidence.  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Jamieson*, 427 F.3d at 402 ("we may not consider the credibility of witnesses or weigh the evidence").

Here, Petitioner was charged under two separate sections of the Ohio Revised Code.  As to the Aggravated Robbery charge, the state bore the burden of satisfying the following elements:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> > (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

O.R.C. §2911.01(A)(1).  As to the Kidnapping charges, the state bore the burden of satisfying the following elements:

> (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> > *       *       *
>
> > (2) To facilitate the commission of any felony or flight thereafter;

O.R.C. §2905.01(A)(2).

-14-

As Respondent notes, the factual findings of the state appellate court are presumed to be correct unless they are rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1); *Warren*, 161 F.3d at 360-61. The state appellate court's factual findings demonstrate that the state presented sufficient evidence to support Petitioner's convictions under O.R.C. §§ 2911.01(A)(1) and 2905.01(A)(2). Petitioner has come forth with no evidence to rebut the state appellate court's findings by clear and convincing evidence.

Turning first to the Aggravated Robbery charge, the state provided testimony from three employees of the Marion Community Credit Union. They all testified that a man entered the Credit Union and ordered them to get on the floor. They testified that the man pointed a gun at the tellers and ordered them to give him the money from their teller drawers. This testimony certainly provides a sufficient basis for a jury to find that the perpetrator committed Armed Robbery because it provides a factual basis for finding that the perpetrator committed a theft offense while possessing a deadly weapon – a handgun. Therefore, the remaining issue is whether the state introduced sufficient evidence to establish the identity of the perpetrator.

Two of the employees described the man as having a red and white covering on his face. Two of the employees described the perpetrator as approximately six feet tall and hefty. One employee stated that she saw that he had a full white beard. Two of the employees testified that they saw a blue truck leave the scene following the robbery. The state provided evidence to show that a blue truck was discovered nearby with a red, white, and blue bandana and a baseball cap. A forensic scientist testified that DNA testing showed that samples on the cap and bandana matched Petitioner's DNA, and Petitioner stipulated that the samples matched his DNA. The forensic analyst further testified that no other DNA samples were found on the clothing. The blue truck also contained a receipt from Tim Blanton, who stated that he had sold the truck to Petitioner in April of 2004. Further, Jaclyn Brossia testified that her fiancée sold a car to Petitioner the day before she saw a newspaper article about the Credit Union robbery, and Petitioner was about six feet, two inches tall, stocky, and had grayish-white hair and longer facial hair. She further added that Petitioner never returned to pick up the title for the car, even though he said he would do so the next day. Lastly,

-15-

Hollie Adkins testified that Petitioner visited her and Lisa Massey for two weeks in Florida, and, during that time, he discussed the robbery between ten and fifteen times.  He specifically stated that he had his face covered during the robbery, he used a gun, he left the truck behind, and he purchased another vehicle to drive to Florida.  While this evidence is, for the most part circumstantial, it provides a sufficient basis for inferring that Petitioner was the perpetrator because the evidence could establish that Petitioner matched the physical description of the perpetrator, wore a similar bandanna and cap, owned a blue truck like the one observed at the scene, purchased a new vehicle and left for Florida without picking up the title from the seller, and then admitted the details of the crime to Hollie Adkins.  In short, competent evidence was available for the jury to find Petitioner guilty of Armed Robbery.

Turning to the Kidnapping charges, the same evidence was available to establish Petitioner's guilt.  The elements of Kidnapping were satisfied because the Credit Union employees testified that the perpetrator brandished a gun and ordered them to lie on the floor while he retrieved the money.  Therefore, the state established that Petitioner used a threat of force to restrain the liberty of the three tellers while committing Armed Robbery, a felony, thereby satisfying the burden under Ohio's Kidnapping statute.

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground One of the instant petition.

### B.        Ground Two of the Petition lacks merit.

Petitioner next argues that his appellate counsel was ineffective for failing to challenge a sentence that was based on judicial factfinding.  Petitioner's argument lacks merit because his sentence did not involve unconstitutional factfinding.

### i.        Standard for effective assistance of appellate counsel.

A defendant is entitled to the effective assistance of appellate counsel in connection with his first appeal of right.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).  The failure of appellate

-16-

counsel to raise an issue can amount to constitutionally ineffective assistance. *Whiting v. Burt*, 395 F.3d 602, 616 (6th Cir. 2005); *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004). While appellate counsel need not raise every nonfrivolous issue on direct appeal, *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *McFarland*, 356 F.3d at 710; *Joshua*, 341 F.3d at 441; *Buell v. Mitchell*, 274 F.3d 337, 352 (6th Cir. 2001), counsel still must exercise reasonable professional judgment in determining which issues to raise. *Jones*, 463 U.S. at 753; *Joshua*, 341 F.3d at 441. The presumption of effective assistance of appellate counsel will be overcome only when the ignored issues are clearly stronger than the issues presented. *Joshua*, 341 F.3d at 441; *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel is not ineffective for failing to raise an issue that lacks merit. *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ; *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001); *Jones*, 463 U.S. at 751-52 (it is important for appellate counsel to "winnow[ ] out weaker arguments on appeal and focus[ ] on one central issue if possible, or at most on a few key issues."); *Smith v. Murray*, 477 U.S. 527, 536 (1986) (the ability to discern worthy claims from unworthy ones is the "hallmark of effective appellate advocacy.") The Sixth Circuit has suggested that certain considerations be taken into account in determining whether counsel rendered ineffective assistance on appeal:

(1) Were the omitted issues "significant and obvious"?

(2) Was there arguably contrary authority on the omitted issues?

(3) Were the omitted issues clearly stronger than those presented?

(4) Were the omitted issues objected to at trial?

(5) Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible

-17-

issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes*, 388 F.3d at 191; *McFarland*, 356 F.3d at 711; *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002).  Additionally, "a habeas court may also consider '[p]revailing norms of practice as reflected in American Bar Association standards and the like.' " *Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006) quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984), *cert. denied*, 127 S. Ct. 941 (2007).

With respect to prejudice in the context of ineffective assistance of appellate counsel, the petitioner must show a reasonable probability exists that, except for his counsel's deficient performance, he would have prevailed on appeal.  *Mapes*, 388 F.3d at 194.  While this analysis requires an evaluation of the petitioner's underlying claims, it does not require a decision on these issues, but merely a determination that a reasonable probability exists that the petitioner would have prevailed on appeal.  *Id.*

### ii. *Apprendi / Blakely / Foster* Standard

In *Apprendi v. New Jersey*, the U.S. Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  530 U.S. 466, 490 (2000).  In 2004, the U.S. Supreme Court decided *Blakely v. Washington* and held that the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict *or admitted by the defendant*, and not the maximum sentence a judge may impose after finding additional facts.  542 U.S. 269, 303 (2004) (emphasis added).  On February 27, 2006, the Supreme Court of Ohio consolidated four criminal cases in an opinion styled *State v.*

*Foster* and held, *inter alia*, that O.R.C. §§ 2929.14(B) and 2929.14(E)(4) were unconstitutional because they required judicial factfinding prior to imposing more than the minimum sentence or a consecutive sentence, respectively. 845 N.E.2d 470, 497 (Ohio 2006). The *Foster* court severed the unconstitutional portions of the sentencing statute, and gave trial courts discretion to impose more than the minimum sentence or a consecutive sentence without making findings of fact.

In this case, Aggravated Robbery is a felony of the first degree and Kidnapping is a felony of the second degree. ECF Dkt. #5, Ex. 4; *See also* O.R.C. §§ 2905.01(C), 2911.01(C). The Ohio sentencing statute provides in its pertinent part:

> (1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years.

> (2) For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years.

O.R.C. §2929.14(A). Therefore, the statutory maximum following *Apprendi / Blakely / Foster* is 10 years for a first degree felony, and 8 years for a second degree felony.

### iii.    Application of law to Ground Two

Here, Petitioner's ineffective assistance of counsel claim should fail because he has failed to establish deficient performance. More specifically, Petitioner alleges that his appellate counsel was ineffective for failing to object to the trial court's sentence, but the issue was never raised by trial counsel. Consequently, counsel was justified in believing that the issue was not preserved for appeal. *See State v. Awan*, 489 N.E.2d 277, 280 (Ohio 1986) (holding that failure to raise an objection in the trial court constitutes waiver of the issue under Ohio law); *State v. Williams*, 364 N.E.2d 1364, 1367 (Ohio 1977). Therefore, it was entirely reasonable for appellate counsel to choose not to raise the *Blakely* claim on appeal, and the first prong of the *Strickland* standard is not satisfied.

Further, Petitioner does **not** contend appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel based on a failure to raise a *Blakely* claim at sentencing. In that circumstance, trial counsel's failure to raise the *Blakely* issue would not be detrimental to an ineffective assistance of appellate counsel claim. Here, however, Petitioner only asserts that

-19-

appellate counsel was ineffective for failing to raise the *Blakely* issue itself. Therefore, Ground Two of the petition should be dismissed because Petitioner has not established deficient performance.

**C.     Ground Three of the Petition should be granted**

**i.     Ground Three of the Petition is not procedurally defaulted**.

Respondent contends that Ground Three is a stand alone *Blakely* claim that Petitioner did not raise to the state court of appeals. ECF Dkt. #5 at 13. This argument is without merit because the Supreme Court of Ohio has freely remanded cases for resentencing following *Foster*, even when the defendant did not preserve the issue for appeal. Therefore , the first prong of the *Maupin* test is not satisfied because Ohio does not regularly follow the procedural bar of waiver related to *Blakely* claims that were pending on direct appeal when *Foster* was decided. As the Ohio Seventh District Court of Appeals has noted, the Supreme Court of Ohio has freely remanded cases for resentencing following its decision in *Foster*:

> [T]he principles of waiver do not apply to *Foster*.
>
> ... *Foster* and its progeny created an exception to the doctrine of waiver. Many of the cases the Ohio Supreme Court has remanded pursuant to *Foster* involved post-*Blakely* sentencing dates. Yet, the Ohio Supreme Court gave no indication whether *Blakely* issues were raised to the trial court. Instead, it has unlimitedly remanded the cases. *See State v. Moser*, 5th Dist. No. 05CA39, 2006-Ohio-165 (sentencing took place on April 20, 2005); *State v. Bryant*, 9th Dist. No. 22723, 2006-Ohio-517 (sentencing took place on May 9, 2005), *State v. Kendrick*, 2d Dist No. 20965, 2006-Ohio-311 (sentencing took place on March 9, 2005), *State v. Phipps*, 8th Dist. No. 86133, 2006-Ohio-99 (sentencing took place on March 3, 2005); *State v. Hampton*, 10th Dist. No. 04AP-806, 2005-Ohio-7063 (sentencing took place on July 12, 2004), *State v. Herbert*, 3d Dist No. 16-5-08, 2005-Ohio-6869 (sentencing took place on May 24, 2005); *State v. Wassil*, 11th Dist. No.2004-P-0102, 2005-Ohio-7053 (sentencing took place on October 18, 2004); *State v. Cottrell*, 7th Dist. No. 04CO53, 2005-Ohio-6923 (sentencing took place on September 3, 2004). This is just a small representative sample of cases from eight different appellate courts which affirmed sentences in which the defendant was sentenced post-*Blakely*, and in which the Ohio Supreme Court later reversed the sentences and remanded for resentencing under Foster.
>
> The above cited cases contain no clear indication that *Blakely* issues were preserved for review. Yet, a review of the cases seems to indicate that they were not. In both the *Phipps* (Eighth Appellate District) and *Kendrick* (Second Appellate District) cases, it does not appear that *Blakely* issues were raised to the appellate courts. In neither of those decisions is *Blakely* even mentioned. **Thus, it appears as if *Blakely* was raised for the first time to the Ohio Supreme Court and yet the Court still reversed and remanded that case for resentencing pursuant to *Foster*.**

>    **If that were not enough for this court to conclude that the doctrine of waiver is
>    inapplicable to *Foster* issues, in *Cottrell, Blakely* issues were not raised to the trial
>    court. Yet, the Ohio Supreme Court still reversed and remanded the case for
>    resentencing pursuant to *Foster.* Thus, the Supreme Court's reversal and remanding
>    of *Cottrell* for resentencing based on *Foster* is a clear indication that Foster is a special
>    case in which the doctrine of waiver is inapplicable.
>
>    Accordingly, considering all the above, we agree with the Sixth Appellate District and
>    hold that the doctrine of waiver is inapplicable to *Foster* issues.

*Buchanan*, No. 05 MA 60, 2006 WL 3059911, *6-*8 (Ohio App. 7 Dist. Oct. 26, 2006), unreported
(emphasis added).  Based upon the *Buchanan* court's account of Ohio case law, the undersigned
finds that Ohio Courts do not enforce the procedural bar of *res judicata* in cases where the defendant
failed to raise a *Blakely* claim even if the defendant was sentenced post-*Blakely*.  Consequently,
Petitioner's claim is not procedurally defaulted despite the fact that it was first raised in the Supreme
Court of Ohio.

### ii. Petitioner's *Blakely* claim has merit.

While the analysis from *Foster* is not completely binding on this Court with respect to issues
of federal law, it does provide an interpretation of Ohio sentencing laws that is helpful in conducting
a constitutional analysis under *Blakely*.  The *Foster* case demonstrates that O.R.C. §§ 2929.14(B)
and 2929.14(E)(4) were unconstitutional because they required judicial factfinding prior to imposing
more than the minimum sentence or a consecutive sentence, respectively.  845 N.E.2d at 497.  In
interpreting Ohio law, the Supreme Court of Ohio noted that §2929.14(B) imposed a "presumptive
minimum prison term that must be overcome by at least one of two judicial findings."  *Id*. at 490.
"[T]herefore, a court [was] not authorized to exceed the shortest prison term unless it [made] the
additional findings."  *Id*.  Under the Supreme Court of Ohio's interpretation of Ohio law, the
maximum sentence that a judge could impose for *Blakely* purposes would be the presumptive
minimum – three years for a first degree felony and two years for a second degree felony.
Consequently, the trial court violated *Blakely* in imposing more than the presumptive minimum
sentence based upon the finding that the minimum prison term would demean the seriousness of the
offense.  *See* ECF Dkt. #5, Ex. 4 at 1.

With regard to consecutive sentences, the *Foster* court held that §2929.14(E)(4) required the court to find that:

> the consecutive service [was] necessary to protect the public from future crime or to punish the offender and that consecutive sentences [was] not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public . . . [and] at least one of three more findings of fact must [have been] found: that the offender was already under control of the court due to an earlier conviction, that at least two of the offenses were committed as part of a course of conduct and the harm was so great or unusual that no single prison term adequately reflects the seriousness of the conduct, or that '[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public.'

*Foster,* 845 N.E.2d at 490-91. Therefore, under the Supreme Court of Ohio 's interpretation of Ohio law, the maximum sentence that a judge could impose for *Blakely* purposes in this case would be three years - the sentence for the first degree felony conviction (Armed Robbery), served concurrently with the sentence for the three Kidnapping charges. Consequently, the trial court violated *Blakely* in finding that the consecutive service of the sentence was necessary to protect the public from future crime or to punish the offender and that at least two of the offenses were committed as part of a course of conduct and the harm was so great or unusual that no single prison term adequately reflects the seriousness of the conduct. *See* ECF Dkt. #5, Ex. 4 at 2.

The *Foster* court ultimately severed O.R.C. §§ 2929.14(B) and 2929.14(E)(4) from the sentencing statute and gave trial judges discretion to impose the full range of penalties available under O.R.C. §2929.14(A). *Foster,* 845 N.E.2d at 498-99.

Respondent contends that no error occurred under *Blakely* because, "under *current* Ohio law, the imposed sentences were clearly within the basic statutory range for respective felonies." ECF Dkt. #29-30 (emphasis original). This argument is misplaced, however, because Petitioner was not sentenced under current Ohio law. He was sentenced under the unconstitutional provisions. Respondent's argument is more appropriately addressed as a matter of harmless-error-analysis.

### iii.      Respondent has not demonstrated harmless error.

Respondent contends that the Court should not remand the instant case because any error by the trial court was harmless. ECF Dkt. #5 at 29-31. Respondent reasons that the unconstitutional

-22-

portions of Ohio's sentencing statutes were severed, and trial judges now have discretion to impose

the same sentence without making factual findings. That argument has recently been rejected by this

Court.   In *Cvijetinovic v. Eberlin*, Judge Kathleen O'Malley held that, "[a] sentencing error is not

harmless if the petitioner could receive a lesser sentence absent unconstitutional judicial fact-finding

although the trial judge may impose the same sentence on remand." Case No. 04CV2555, 2008 WL

918576 (N.D. Ohio March 31,2008), slip op. at *23.   Judge O'Malley based her decision on an in-

depth review of the caselaw surrounding harmless error analysis:

> Recently, the federal district courts in Ohio have taken two different positions
> regarding whether Blakely violations constitute harmless error in light of *Foster. See*,
> *e.g.*, *Shafer v. Wilson*, 2007 WL 315760 (N.D.Ohio Jan.30 2007) (finding *Blakely*
> violation harmless error in light of *Foster* ) (Gwin, J.); *Perry v. Money*, No.
> 1:05cv2737, 2007 WL 2236634 (N.D.Ohio July 31 2007) (finding *Blakely* error was
> not harmless after *Foster* ). A basic understanding of the remedial aspects of the Ohio
> Supreme Court's *Foster* opinion is necessary in order to understand these two
> approaches. *Foster*, 109 Ohio St.3d at 25-28, 845 N.E.2d 470.

*     *     *

> Judge James Gwin of the Northern District of Ohio first articulated the view that
> *Blakely* error was harmless after *Foster. See Shafer*, 2007 WL 315760 at *11. Judge
> Gwin reasoned that the error was harmless because, upon re-sentencing, the trial Judge
> would have full discretion to re-sentence the petitioner to exactly the same sentence.
> *Id*. In *Shafer*, the petitioner had been convicted of a crime for which the presumptive
> minimum sentence- i.e., the required sentence absent certain findings, including
> judicial fact-finding-was three years, but the statutory range was between three and ten
> years. *Id*. at 10. The trial court sentenced the petitioner to five years, apparently
> justifying the sentence above the presumptive minimum by finding that the petitioner
> showed no remorse and abused a position of trust. *Id*. Based on these facts, Judge
> Gwin found harmless error:

> > After the Ohio Supreme Court's decision in *State v. Foster*, sentencing
> > judges are free to impose any sentence within the applicable statutory
> > range without the need to make any specific judicial findings. *See*
> > *Foster*, 845 N.E.2d at 496. Stated otherwise, because Ohio remedied
> > its unconstitutional sentencing regime by making its guidelines
> > advisory, there is no reason to believe the Petitioner would receive a
> > more favorable sentence if the Court grants his habeas request for
> > relief. In light of the fact that the Supreme Court has held that *Blakely*
> > violations are not "structural" errors that require automatic reversal, we
> > therefore agree with Respondent that no basis exists for granting the
> > Petitioner's request for relief despite the fact that his re-sentencing
> > clearly did violate *Blakely*.

> *Id*.

-23-

In habeas cases involving the same issue, the reasoning in *Shafer* was expressly rejected by several other Ohio district courts. *See Villagarcia*, 2007 WL 1028528 at *4; *Noland*, 523 F.Supp.2d at 663; *Perry*, 2007 WL 2236634 at *13; *Shahan v. Jeffries*, No. 2:06cv160, 2007 WL 1432042, at *3 (May 14 2007). These courts reasoned that the fact that an error could be harmless does not satisfy the harmless error standard. As stated by Judge Frost in *Villagarcia*:

> The flaw in [the reasoning in *Shafer* ] is that it equates a possibility of no actual prejudice in terms of the eventual sentence received with an actuality of no prejudice resulting from a constitutional error.... [B]ecause more than one outcome is possible upon re-sentencing, basing harmlessness on assumed certainty is flawed. It converts the concept of harmless error in this context into a doctrine of always harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence must logically preclude any habeas court from saying for a certainty that error is harmless. *See United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir.2005) ("Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless").

*Villagarcia*, 2007 WL 1028528 at *4.

The Court agrees with the reasoning in *Villagarcia*. A sentencing error is not harmless if the petitioner could receive a lesser sentence absent unconstitutional judicial fact-finding. In fact, it appears that the disagreement among the district courts may dissolve-in *Crotts v. Bradshaw*, 1:06cv2519, 2007 WL 3283841, at *17 (N.D.Ohio Oct.30 2007), Judge Gwin expressly retreated from his opinion in *Shafer* and adopted the reasoning articulated in *Villagarcia*.

> The Court agrees with the criticism of *Shafer* and *Leach* that to hold this type of error harmless "converts the concept of harmless error ... into a doctrine of always harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence stops this ... habeas court from saying for a certainty that the error is harmless." *Shahan v. Jeffries*, No. 2:06-cv-160, 2007 U.S. Dist. LEXIS 35149, 2007 WL 1432042, at *3 (S.D.Ohio May 14, 2007). While the state sentencing court may impose the same sentence, it also may choose to impose a different one, as such the Court does not find the error harmless.

*Crotts*, 2007 WL 3283841, at *17.

Applying this reasoning, like the petitioner in *Villagarcia*, Cvijetinovic was sentenced above the presumptive minimum based on judicial fact-finding, but within the statutory range. Therefore, he could receive a lesser sentence upon re-sentencing and the *Blakely* violation is not harmless error. FN18 *See also Oliver*, 397 F.3d at 381 (refusing to apply harmless error analysis to Sixth Amendment violations under Blakely/Booker ); *United States v. Milan*, 397 F.3d 445, 453 (6th Cir.2005).

-24-

> FN18. In the classic category of 'be careful what you ask for,' Cvijetinovic could conceivably receive a harsher sentence upon re-sentencing.

*Cvijetinovic*, 2008 WL 918576 at *21-*24.

Following *Cvijetinovic*, it is clear that harmless error does not apply in the instant case because Petitioner was sentenced beyond the presumptive minimum and *could* receive a lighter sentence on remand. As the *Cvijetinovic* court noted, however, he could also receive a more severe sentence on remand.

### iv.    Conclusion: Ground Three

The undersigned recommends that the Court grant ground three of the instant petition because it is not procedurally defaulted, it has merit, and harmless error does not apply.

## V.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS Grounds One and Two of the petition, with prejudice, due to a lack of merit, GRANT Ground Three of the instant petition, and remand Petitioner's case for resentencing.

DATE: July 30, 2008                           *s/ George J. Limbert*
                                              George J. Limbert
                                              United States Magistrate Judge

    ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).